# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

**CIVIL ACTION NO. 09-11-DLB**

**NISSAN MOTOR ACCEPTANCE CORP.**                               **PLAINTIFF**

**v.**                 **MEMORANDUM OPINION AND ORDER**

**SIM FRYSON MOTOR COMPANY, INC., ET AL.**                **DEFENDANTS**

\*    \*    \*    \*    \*

Plaintiff Nissan Motor Acceptance Corporation ("NMAC") commenced this action alleging Defendant Sim Fryson Motor Company ("Dealership")–the local automotive dealership of the national franchise Nissan–breached terms of various franchise and financing agreements executed by the parties. This Court's jurisdiction is premised on diversity of citizenship.

This matter is before the Court on Plaintiff NMAC's Motion for Summary Judgment on Liability as to Defendants Thomas Scialpi and Dennis Cartmille (Doc. #77). The motion has been fully briefed (Docs. #80, 82), and the matter is now ripe for review. For the reasons set forth below, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff's motion for summary judgment seeks to hold Defendants Thomas Scialpi ("Scialpi") and Dennis Cartmille ("Cartmille") liable, as a matter of law, for the various financing agreements executed on behalf of the automotive dealership, Sim Fryson Motor Company, Inc. d/b/a Sim Fryson Nissan (the "Dealership"). Scialpi and Cartmille are former co-owners of the Dealership located in Ashland, Ky, and Scialpi is the former President.

Originally, it was owned by Intervening Plaintiffs Sim Fryson and Fred Jones, who sold the Dealership to Scialpi and Cartmille in 2006.[1] As security for these financing agreements Scialpi and Cartmille executed identical guaranty agreements, promising to jointly and severally indemnify NMAC against any loss as a result of the Dealership's failure to make payment in accordance with the terms of each agreement. In November 2003, the Dealership entered into a Sign Program – Lease and Maintenance Agreement ("Sign Agreement") with Plaintiff.[2] Scialpi and Cartmille assumed the obligations of the Sign Agreement entered into by Sim Fryson after purchasing the Dealership in 2006.

On April 4, 2006, the Dealership also entered into an Automotive Wholesale Financing Agreement ("Financing Agreement") with NMAC under which Plaintiff provided automobiles, equipment, and parts to the Dealership. (Doc. #77, Ex. 3). In exchange, the Dealership would make payments to NMAC once the inventory was sold in the ordinary course of the Dealership's business. NMAC maintained a security interest in the property, goods, and assets of the Dealership (Doc. #77, Ex. 3). On April 12, 2006, the Dealership and NMAC also executed a Dealer Capital Loan and Security Agreement ("Loan Agreement"), under which NMAC would loan the Dealership money in exchange for a security interest in the same property, goods, accounts and other assets set forth in the previously executed Financing Agreement. (Doc. #77, Ex. 4).

As further security for the various agreements between NMAC and the Dealership,

---

[1]Following the purchase, the Dealership was known as Sim Fryson Motor Company, Inc. d/b/a Sim Fryson Nissan, Nissan of Ashland, Sim Fryson Honda, Honda of Ashland, Ashland Auto Group, and Giant Auto Group of Ashland. (Doc. #77, Ex. 1).

[2]Intervening Plaintiff Sim Fryson executed the Sign Agreement because he owned and operated the Dealership in 2003 when the agreement was executed.

Scialpi and Cartmille executed separate, yet substantively identical, Continuing Guaranty Agreements ("Guaranty Agreement"). (Doc. #77, Exs. 5 & 6). In their respective agreements, Scialpi and Cartmille unconditionally guaranteed "the full and prompt performance and payment of all present and future liabilities of the [Dealership]" under the terms of all of its various agreements with NMAC "irrespective of their nature and the time they arise." (Doc. #77, Exs. 5 & 6). Under the terms of the Guaranty Agreement, NMAC had the right to bring suit against the Dealership, Scialpi and/or Cartmille in one action or "separately without first or contemporaneously suing the others." (Doc. #77, Exs. 5 & 6).

In default of its Financing Agreement with NMAC, in May 2007 the Dealership sold 150 vehicles "out of trust," meaning it sold vehicles without remitting payment to NMAC as required under the terms of the agreement. In 2008 the Dealership transferred 40 vehicles to an affiliated dealership, Garden State Honda, in New Jersey without notice to or permission from NMAC. The total value of the 150 vehicles sold out of trust and the 40 vehicles transferred to Garden State Honda well surpassed three million dollars. The Dealership has defaulted on every one of the above-named agreements in failing to make payment to NMAC on amounts due, including amounts owed for selling vehicles out of trust and transferring vehicles to an affiliated dealership without payment.[3]

On July 15, 2009, the Dealership filed a Chapter 11 bankruptcy petition, which subjected all activities related to the Dealership to the Bankruptcy Code's automatic stay provision. Plaintiff then filed a Motion for Relief from Stay for the purposes of executing a Writ of Possession. Before the Court ruled on the motion, the parties tendered an agreed

---

[3]The occurrence of an event of default under the Financing Agreement constitutes default under the Loan Agreement as well. (Doc. #77, Exs. 3 & 4).

3

order whereby the Dealership agreed the stay should be lifted to allow NMAC to take possession of all vehicles that were security for NMAC's "various credit facilities." (Doc. #74, Ex.1). The Bankruptcy Court entered the parties' Agreed Order on September 11, 2009, granting relief from the automatic stay. 11 U.S.C. § 362. NMAC took custody of the vehicles September 22-24, 2009. A Chief Liquidating Officer was appointed by the Bankruptcy Court to sell the Dealership. Plaintiff contends that once the Dealership is sold via Bankruptcy proceedings, the obligations due and owing under the various agreements can be determined with specificity at which time Plaintiff represents it will make a separate motion for entry of a final judgment, including the total amount of damages.

## II. ANALYSIS

### A. Standard of Review

Kentucky law is applicable in this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). When resolving a motion for summary judgment, however, a federal court sitting in diversity applies the Fed.R.Civ.P. 56 standard, not Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, ----- U.S. -----, 130 S.Ct. 1181 (2010).

Summary judgment is proper "if the pleadings, deposition, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must

produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). "[T]he opposing party must go beyond the contents of his pleadings to set forth specific facts indicating the existence of a genuine issue to be litigated." *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 522 (6th Cir. 2008) (citing Fed.R.Civ.P. 56(e)). The moving party will satisfy its burden if it can establish "there is no evidence underlying the non-moving party's case." *Id.* If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### B. Guaranties Under Kentucky Law

Under Kentucky law, a guarantor's rights and obligations are dependent upon what the parties contracted to do. *McGowan v. Well's Trustee*, 213 S.W. 573, 576 (Ky. 1919). In other words, a guarantor's liability to a creditor is determined by "[t]he intention of the parties to the contract of guaranty as gathered from the language, read in the light of attendant circumstances..." as is true for any contract. *Id.* at 577; *see also Pittsburgh Plate Glass Co. v. Cassidy*, 238 S.W. 172 (Ky. 1922) (holding "every guaranty is to be interpreted in the light of the declared or inferred purpose and intent of the parties as ascertained from the writing itself.").

Two types of guaranty classifications exist in Kentucky: (1) one for payment, an absolute guaranty, or (2) one for collection, a conditional guaranty. *McGowan*, 213 S.W. at 576-77; *see also Liberty Nat'l Bank & Trust Co. v. Russ*, 668 S.W.2d 567, 568 (Ky. Ct. App. 1984). "A guaranty of payment is where the guarantor undertakes unconditionally that the debtor will pay" whereas "a conditional guaranty imports the happening of some

5

contingency other than the default of the principal debtor." *Coons v. Bank of Commerce*, 26 S.W.2d 15, 17 (Ky. 1930); *see also APL, Inc. v. Ohio Valley Aluminum, Inc.*, 839 S.W.2d 571, 573 (Ky. Ct. App. 1992) ("An absolute guaranty is a contract by which the guarantor promises that if the debtor does not perform his obligation or obligations, the guarantor will perform some act...to or for the benefit of the creditor, irrespective of any additional contingencies," while a "conditional guaranty...contemplates as a condition of the guarantor's liability the happening of some contingent event other than the default of the principal debtor, or the performance of some act on the part of the creditor."). Generally, an absolute guaranty takes the form of a promise to pay the debt at maturity if not paid by the principal debtor. *Yager v. Ky. Title Co.*, 66 S.W. 1027, 1028 (Ky. 1902). The creditor has the right to proceed against the guarantor immediately upon default of the principal, and "[t]he guarantor's liability is dependent upon the same rules of law by which the liability of one who has broken his contract is determined."[4] *Id.*

Plaintiff contends the guaranties signed by Scialpi and Cartmille are absolute guaranties that unconditionally pledge repayment of debt upon the Dealership's default. Accordingly, as to Scialpi's and Cartmille's liability under the Guaranty Agreement, Plaintiff argues, grant of summary judgment in its favor is warranted. In response, Defendant Cartmille argues he should be absolved of any liability under the Guaranty Agreement because he did not participate in or contribute to the Dealership's default on its various agreements with NMAC. He specifically asserts that he was terminated from the

---

[4]Specifically, the guaranties signed by Scialpi and Cartmille provide in relevant part "Lender is authorized and empowered to proceed against Guarantor without joining Dealer or any other guarantor. All of said parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others." (Doc. #77, Exs. 5 & 6).

6

Dealership on February 15, 2007, and as of that date was no longer involved in the Dealership's business operations, claiming that superseding "actions of other individuals beyond his control" are the basis of Plaintiff's Complaint. (Doc. #80, Ex. 1). Defendant Scialpi never responded to Plaintiff's motion for summary judgment.

As an initial matter, a non-movant's failure to respond to a motion for summary judgment does not itself warrant a grant of summary judgment in the moving party's favor. Federal Rule of Civil Procedure 56(e)(2) provides:

> When a motion for summary judgment is made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, *if appropriate*, shall be entered against that party.

(emphasis added). The last line of Rule 56(e)(2) makes clear it does not alter the summary judgment standard expressed in Rule 56(c). "A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). Put simply, the non-movant's failure to respond does not relieve the movant of its burden to establish that "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Scipio v. Sony Music Entm't, Inc.*,173 F. App'x 385, 393 (6th Cir. 2006). Accordingly, Scialpi's non-response–standing alone–is not determinative of whether grant of summary judgment is appropriate. The Court will nevertheless consider the entirety of the record to determine whether a liability finding as to Scialpi and Cartmille is appropriate.

Here, the language of the guaranty is facially unqualified. Scialpi and Cartmille

signed identical guaranties that state in relevant part:

> [Thomas Scialpi/Dennis Cartmille] hereby unconditionally and irrevocably deliver(s) this Guaranty to Lender and hereby *unconditionally* and *irrevocably guarantee(s)* to Lender, and any transferee of this Guaranty or of any liability guaranteed hereby, (a) the full and prompt performance and payment of *all present and future liabilities* of Dealer to Lender *irrespective of their nature or the time they arise*, and (b) the due and punctual performance and observance of all agreements and indemnities of Dealer to Lender...it is intended to be, the *personal guaranty* of payment and performance of each individual signing below in his or her individual capacity. If any liability guaranteed hereby is not paid when due, Guarantor hereby agrees to and will immediately pay same, without resort by the holder thereof to any other person or party...

> The obligations of Guarantor under this Guaranty shall be continuing, *absolute*, and *unconditional under any and all circumstances*...This Guaranty is a continuing guaranty and shall remain in force at all times hereafter, whether there are any outstanding liabilities or not, until a written notice of termination from Guarantor is received and acknowledged by NMAC stating an effective date of no less than two (2) business days following receipt of such notice by NMAC.

(Doc. #77, Exs. 5 & 6) (emphasis added). The plain language of the Guaranty Agreement indicates it is absolute as it does not contemplate any additional contingency beyond the Dealership's default as a condition of the Defendants' liability. Defendants' guaranteed the prompt payment of "all present and future liabilities...irrespective of their nature" and that the guaranty would be "absolute and unconditional under any and all circumstances," language that itself conveys the unqualified nature of the guaranties signed. Moreover, the Guaranty Agreement must be construed in light of the parties' intentions, ascertained from attendant circumstances. *McGowan*, 213 S.W. at 577. The record does not reflect that the parties intended to execute anything but an absolute guaranty. Neither Defendant, in response to summary judgment or elsewhere, contest Plaintiff's characterization of the guaranty as unconditional nor do they point to any circumstances surrounding its signing that would indicate otherwise. For these reasons, the Court finds that the language

contained in the Guaranty Agreement creates an absolute guaranty that is immediately enforceable against the guarantors whose signature it bears.

Defendant Cartmille's contention that he is not responsible for the Dealership's default and therefore should not be liable under the Guaranty Agreement is unavailing.[5] Construing the facts in a light most favorable to Defendants, the Court assumes that Cartmille is not at fault nor did he play any role in the Dealership's default on the various agreements with NMAC. Cartmille's lack of fault, however, is irrelevant to the enforceability of the Guaranty Agreement as signed. In his Response, Cartmille never contests that he signed the Guaranty Agreement, nor does he question its truth or accuracy.[6] As this Court

---

[5]Defendant Cartmille incorrectly assumes that Plaintiff's motion for summary judgment is premised only on the Loan and Guaranty agreements. (Doc. #80). However, Plaintiff's Complaint and Motion for Summary Judgment allege default on the Sign and Financing agreements as well. The Guaranty Agreement Cartmille signed guarantees he will be responsible for the "prompt performance and payment of *all present and future liabilities* of Dealer to Lender." (Doc. #77, Ex. 6) (emphasis added).

[6]In fact, Plaintiff sent Defendant Cartmille Requests for Admission, which specifically requested that Defendant admit or deny the following:
- (1) Cartmille singed the Continuing Guaranty Agreement
- (2) The Continuing Guaranty Agreement attached to the Complaint as Exhibit 5 is a true and accurate copy of the Continuing Guaranty Agreement singed by Cartmille.
- (3) Cartmille individually guaranteed the indebtedness of Sim Fryson Motor Company, Inc. d/b/a Sim Fryson Nissan, Nissan of Ashland, Sim Fryson Honda, Honda of Ashland, Ashland Auto Group, and Giant Auto Group of Ashland through the execution of his Continuing Guaranty Agreement.
- (4) Cartmille agreed he would jointly and severally indemnify NMAC against any loss as a result of the failure of Sim Fryson Motor Company, Inc. d/b/a Sim Fryson Nissan, Nissan of Ashland, Sim Fryson Honda, Honda of Ashland, Ashland Auto Group, and Giant Auto Group of Ashland to make payment in accordance with the terms and conditions of the Financing Agreement.
- (5) Cartmille agreed to reimburse NMAC for all expenses, collection charges, court costs and attorney fees incurred in NMAC's efforts to collect any amount due from them under the Continuing Guarantee Agreement.

(Doc. #77, Ex. 15).
Plaintiff correctly asserts that by not responding to its Request for Admissions, Defendant Cartmille deemed admitted all the facts contained therein pursuant to Fed.R.Civ.P. 36(a)(3), which states that a request for admission "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party the admission a written answer or objection addressed to the matter...". Identical Requests for Admission were served upon Scialpi. (Doc. #77, Ex. 14). Both sets of Requests for Admission were served on October 6, 2009, and Defendants have yet to respond as of the date of this Order.

already noted, an absolute guaranty to pay the debt of another is an unconditional promise to assume payment regardless of external contingencies. In short, Cartmille's lack of involvement in the Dealership after February 15, 2007, does nothing to nullify the absolute and unconditional nature of the guaranty he signed. His obligation to pay is not dependent upon a finding of fault in the events that led to the Dealership's default; it is simply enough that the Dealership defaulted on its obligations to NMAC. Cartmille's involvement–or lack thereof–as it relates to the Dealership's default, is wholly irrelevant. *McGowan*, 213 S.W. at 577; *Liberty Nat'l Bank & Trust Co. v. Russ*, 668 S.W2d at 568; *see also Banterra Bank v. Hendrick*, No. 5:09-cv-12, 2009 WL 3231359 (W.D. Ky. Oct. 1, 2009) (The court determining the guaranty signed was an absolute guaranty, granted summary judgment to plaintiff bank after law school defaulted on loans, and defendants–one who was president of the law school and one who was on the board of directors–personally guaranteed the loan agreement.).

The plain language of guaranty in this case makes clear that Scialpi and Cartmille individually guaranteed the Dealership's indebtedness by way of signature on their respective Guaranty Agreements. Defendants in response have not provided this Court with any evidence that the guaranties, as signed, have been distorted in any way or that the circumstances surrounding their creation warrant any equitable relief. Moreover, the terms governing termination and discharge of Scialpi or Cartmille's liability on their respective guaranties were not satisfied insofar as the evidence has been presented to this Court. Therefore, even when viewed in a light most favorable to the non-moving party, the available facts establish that no genuine issue of material fact exists as to Defendants' guarantees of Nissan's debts under the Sign, Financing, and Loan agreements.

Accordingly, Plaintiff Nissan Motor Acceptance Corp.'s Motion for Summary Judgment on Liability as to Thomas Scialpi and Dennis Cartmille (Doc. #77) is **GRANTED.**

### III.  CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment on Liability as to Thomas Scialpi and Dennis Cartmille (Doc. #77) is hereby **GRANTED**.  Plaintiff shall file a Proposed Judgment within ten (10) days.

This 30th day of June, 2010.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Ashland\0-09-11-Grant MSJ.wpd